UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ARCANGELO CAPOZZOLO,

                Plaintiff-Appellant,

     v.

AKF, INC. d/b/a FUNDKITE,

                Defendant-Appellee.

**DECISION AND ORDER**

21-CV-1135S

## I.  INTRODUCTION

In an adversary proceeding before Chief Bankruptcy Judge Carl Bucki, AKF, Inc.,
d/b/a Fundkite ("Fundkite") successfully moved for summary judgment declaring debtor
Arcangelo Capozzolo's debt to it nondischargeable. At stake is an approximately $1.6
million dollar debt that Capozzolo seeks to discharge in bankruptcy. Because the
Bankruptcy Court properly found that the debt is nondischargeable, this Court will affirm
its decision.

## II.  BACKGROUND

Debtor Arcangelo Capozzolo was the sole owner of Buffalo Forklift, LLC. (Docket
No. 5-3 at pp. 9-10.) Buffalo Forklift was engaged in purchasing and reselling lift
equipment. (Id. at p. 11.)

Buffalo Forklift funded its operations, in part, through merchant cash advances.
(Id. at pp. 44-45.) On July 11, 2018, Capozzolo, on behalf of Buffalo Forklift, entered a
cash-advance agreement with funder Mr. Advance for $232,000. (Docket No. 5-1 at p.
44.)

Later that month, Buffalo Forklift sought funding from Fundkite "as a

reconsolidation loan … to pay off [its] previous cash advances" and get a lower monthly payment. (Docket No. 5-3 at p. 39.) Capozzolo learned of Fundkite when he was contacted by Alex Ricci, a broker working for Moneywell funding. (Id.)

In connection with his application for funding from Fundkite, Capozzolo was asked to provide a list of his outstanding merchant cash obligations. (Id. at p. 42.) On July 25, 2018, Capozzolo emailed a list to Ricci, who forwarded the list to Fundkite. (Docket No. 5-1 at pp. 38-40.) The subject line of Capozzolo's email was "EXACT ADVANCE BALANCES attached in excel." (Id. at p. 38.) The list contained seven entries, each representing a separate contract for a cash advance, with the earliest contract signed on August 4, 2017 ("Platinum") and the latest signed on July 24, 2018 ("High Speed Capital"). (Id. at p. 40.) The list did not include Capozzolo's July 11, 2018, obligation to Mr. Advance. On the same day, Ricci forwarded Capozzolo's email to Fundkite. (See id. at p. 38.)

In addition to requesting the list of outstanding merchant cash obligations, Fundkite took other steps to learn of Buffalo Forklift's financial condition. Fundkite reviewed Buffalo Forklift's 2017 and 2018 balance sheets, 2017 and 2018 profit-and-loss statements, bank statements for 2016 through 2018, a list of accounts receivable, and Buffalo Forklift's 2017 tax return. (Id. at pp. 177-78.) Fundkite also reviewed credit reports for Capozzolo and Buffalo Forklift, searched public records for outstanding lawsuits, obligations, and liens, conducted site visits, and investigated Buffalo Forklift's business assets. (Id. at p. 178.) Fundkite's research did not reveal that Buffalo Forklift had received funding from Mr. Advance. (Id.) Had Fundkite known of the contract between Mr. Advance and Buffalo Forklift, it would not have provided funding to Buffalo Forklift. (Docket No. 3-10 at p. 3.)

On August 1, 2018, Fundkite and Buffalo Forklift entered into a "Revenue

2

Purchase Agreement" pursuant to which Fundkite purchased Buffalo Forklift's future cash revenues in exchange for $1,696,962.28. (Docket No. 5-1 at pp. 52-53.)  In October 2018, Buffalo Forklift ceased making payments to Fundkite. (Docket Nos. 3-10 at p. 4, 5-3 at pp. 56-57.) A confession of judgment against Buffalo Forklift and Capozzolo was entered in New York State Supreme Court on October 17, 2018. (Docket No. 5-1 at p. 73.)

Capozzolo filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on December 6, 2019. (Docket No. 3-10 at p. 5.) On March 10, 2020, Fundkite commenced an adversary proceeding seeking to have its loan to Capozzolo declared nondischargeable under 11 U.S.C. §§ 523 (a)(2)(A), (a)(2)(B), and (a)(6). (Docket No. 3-3 at pp. 3-14.) On January 25, 2021, Fundkite moved for summary judgment on its claims arising under §§ 523 (a)(2)(B) and (a)(6). (Docket No. 5-2 at pp. 6-7.) The Bankruptcy Court orally granted Fundkite's motion on March 1, 2021, finding the debt nondischargeable pursuant to 11 U.S.C. §§ 523 (a)(2)(B). (See Docket No. 19-2 at pp. 1-52.) Judge Bucki issued a written order to this effect on October 4, 2021. (Docket No. 3-2 at p. 6.)

## III.  DISCUSSION

In this appeal, Capozzolo argues that the Bankruptcy Court erred when it held his debt to FundKite nondischargeable pursuant to 11 U.S.C. § 523 (a)(2)(B).  Fundkite maintains that Judge Bucki's ruling is correct in all respects.

### A.   Legal Standards

#### 1.  Standard of Review

United States District Courts have jurisdiction to hear appeals from "final

judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158 (a). A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." <u>Heilbron v. Plaza</u>, No. 20-CV-00312 (CBA), 2021 WL 1062034, at *2 (E.D.N.Y. Mar. 19, 2021) (quoting <u>Sumpter v. DPH Holdings Corp.</u> (<u>In re DPH Holdings Corp.</u>), 468 B.R. 603, 611 (S.D.N.Y. 2012) (quoting former Fed. R. Bankr. P. 8013)). <u>See also</u> <u>W. Milford Shopping Plaza, LLC v. Great Atl. & Pac. Tea Co., Inc.</u> (<u>In re Great Atl. & Pac. Tea Co., Inc.</u>), No. 14-cv-4170 (NSR), 2015 WL 6395967, at *2 n. 1 (S.D.N.Y. Oct. 21, 2015) (noting that, although the Federal Rules of Bankruptcy Procedure were amended to remove Rule 8013, the appellate powers of the District Court with respect to bankruptcy appeals have remained the same)).

The district court must accept a bankruptcy court's findings of fact unless they are clearly erroneous, but it reviews the bankruptcy court's legal conclusions *de novo*. <u>Ball v. A.O. Smith Corp.</u>, 451 F.3d 66, 69 (2d Cir. 2006).

### 2.  Summary Judgment

Federal Rule of Civil Procedure 56 applies in adversary proceedings pending in bankruptcy court. <u>McHale v. Boulder Capital, LLC</u> (<u>In re 1031 Tax Grp., LLC</u>, 439 B.R. 47, 58 (Bankr. S.D.N.Y.), <u>supplemented</u>, 439 B.R. 78 (Bankr. S.D.N.Y. 2010) (citing Fed. R. Bankr. P. 7056). A court should grant summary judgment under Rule 56 only where "there is no genuine issue as to any material fact and [ ] the movant is entitled to judgment as a matter of law." <u>Id.</u> (quoting <u>Beyer v. County of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56 (c) (internal quotation marks omitted)).

Under Federal Rule of Civil Procedure 56 (c), "the district court must consider all 'pleadings, depositions, answers to interrogatories, and admissions on file, together with

4

the affidavits,' in determining whether there is a genuine issue of material fact." <u>Lavender v. Manheim's Penn. Auction Svcs, Inc.</u> (<u>In re Lavender</u>) 399 F. App'x 649, 651 (2d Cir. 2010) (quoting <u>Davis v. New York</u>, 316 F.3d 93, 100 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)); <u>see also</u> Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable in adversary proceedings in bankruptcy)).

"Assessments of credibility and choices between conflicting versions of the events are … not [matters] for the court on summary judgment." <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996)). But "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Aersale Inc. v. Ibrahim</u>, No. 13 CIV. 713 KBF, 2013 WL 5366384, at *3 (S.D.N.Y. Sept. 25, 2013) (quoting <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010)). "Self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment. <u>Id.</u> (quoting <u>BellSouth Telecommc'ns. Inc. v. W.R. Grace & Co.-Conn.</u>, 77 F.3d 603, 615 (2d Cir. 1996)).

### 3. Nondischargeability of Debts pursuant to 11 U.S.C. § 523 (a)(2)(B)

Pursuant to 11 U.S.C. § 523 (a)(2)(B), a debtor will not be discharged from any debt that was obtained by use of a statement in writing "(i) that is materially false;(ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable … reasonably relied; and (iv) that the debtor caused to be made … with intent to deceive." 11 U.S.C. § 523 (a)(2)(B).

Capozzolo argues that the Bankruptcy Court erred in granting summary judgment

5

under § 523 (a)(2)(B) because there are issues of fact regarding (1) whether he made any material misrepresentations, (2) whether he acted with intent to deceive, and (3) whether Fundkite reasonably relied on the list.  This Court finds each of these arguments unpersuasive.

### a. The list of outstanding merchant cash advances constituted a material misrepresentation

Capozzolo first argues that the list of obligations he provided to Fundkite was not a "material misrepresentation" because an omission cannot constitute a misrepresentation and because it is unimaginable that a mere $232,000 would have affected Fundkite's decision whether to offer funding.

Capozzolo's argument that an omission cannot constitute a material misrepresentation is simply incorrect. A written statement is "materially false" under § 523 (a)(2)(B) if it "*omits*, conceals or understates liabilities" or if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." Bethpage Fed. Credit Union v. Furio (In re Furio), 77 F.3d 622, 622-25 (2d Cir. 1996) (emphasis added) (citing Borg Warner Cent. Envtl. Sys., Inc. v. Nance (In re Nance), 70 B.R. 318, 321 (Bankr. N. D. Tex. 1987)).

As to materiality, Fundkite submitted the affidavit of its CEO, Alex Shvartz, who stated that, had Fundkite known of Buffalo Forklift's obligation to Mr. Advance, it would not have extended the funding to it. (Docket No. 3-10 at p. 3.) Capozzolo does not respond to this admissible evidence with any counter evidence that creates a question of fact. He only speculates, citing In re Furio, that this sum cannot have been relevant to Fundkite's funding decision.

But Furio is inapposite here. In Furio, the Court used the bank's known funding

6

formula—a debt-to-income ratio—to determine that a debtor's omission of a $140/month obligation would not have made a difference given the bank's incorrect assumption that he was already making monthly payments on a $240/month obligation. In re Furio, 77 F.3d 622, 625 (2d Cir. 1996). Unlike in Furio, this Court cannot determine the impact a difference of $232,000 would have made in FundKite's calculations. Further, Buffalo Forklift ceased meeting its payment obligations to Fundkite in October 2018, a few months days after entering the Fundkite agreement—a fact which bolsters Fundkite's argument that it needed to know of all Buffalo Forklift's obligations given the tightness of its finances. This Court therefore finds no error in Judge Bucki's determination that Capozzolo made a material misrepresentation by omission.

### b. Intent to Deceive

Capozzolo next argues that there is a question of fact whether he intended to deceive Fundkite by omitting the Mr. Advance obligation from his list.

Intent to deceive may be established through circumstantial evidence and inferred from the totality of the evidence presented. Voyatzoglou et al. v. Hambley (In re Hambley), 329 B.R. 382, 398–99 (Bankr. E.D.N.Y. 2005) (citing Hong Kong Deposit and Guaranty Ltd. v. Shaheen (In re Shaheen), 111 B.R. 48, 53 (Bankr. S.D.N.Y. 1990) ("intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor]")). Intent can be found where a debtor either made a statement knowing that it was false, or made it with such reckless disregard of the truth so as to be the "equivalent of intent to defraud." Hudson Valley Water Res., Inc. v. Boice (In re Boice) 149 B.R. at 47 (citing Town N. Nat'l Bank of Longview, Tx. v. Biedenharn (In re Biedenharn) 30 B.R. 342,

346 (Bankr. W.D. La. 1983)). A debtor's "unsupported assertions of an honest intent will not overcome the natural inferences from admitted facts." Id. (citing Collier ¶ 523.10, at 523–71–72).

The Bankruptcy Court found that Fundkite had satisfied its burden as to intent by showing that Capozzolo knew, or should have known, that the list he submitted failed to list his July 11, 2018 obligation to Mr. Advance. Capozzolo does not contest the fact that the list he provided to Moneywell's Ricci, and that Ricci provided to FundKite on his behalf, omitted the Mr. Advance obligation. Rather, he argues that the list nowhere indicated that it was an exhaustive list of his merchant cash advance obligations, and that failure to include the Mr. Advance obligation was "inadvertent." (See Docket No. 5 at pp. 13-17.)

This Court is not persuaded. The proximity between the Mr. Advance contract (July 11, 2018) and the creation of the list omitting that obligation (July 25, 2018) suffices to demonstrate that Capozzolo knew or should have known that the list was incomplete. At summary judgment, Capozzolo's burden was to bring forth some evidence creating a genuine issue of material fact. Capozzolo's counsel argues that any omission was "inadvertent," but the record contains no sworn statement constituting evidence to that effect.

Further, Capozzolo's argument that the list nowhere claimed to constitute "all" his obligations is disingenuous. In an affidavit submitted in support of summary judgment, Fundkite's CEO Alex Shvartz states that he sought a list of Capozzolo's outstanding obligations, because the purpose of the funding was to consolidate those obligations. (Docket No. 3-10 at p. 2.) He stated that Fundkite's primary concern was "that all obligations will be satisfied," and the goal of the funding to Capozzolo, if approved, "would

be to ensure that all merchant cash advance obligations were ultimately satisfied by the funding, leaving Fundkite as the only remaining obligation." (Id.)

At his 2004 deposition, Capozzolo admitted under oath that Fundkite asked him to "provide a list of [his] outstanding merchant cash advances." (Docket No. 5-3 at p. 42.) Capozzolo identified the list of obligations—in the July 25, 2018 email chain—as "a listing of my previous merchant cash advances." (Id. at pp. 42-43.) He testified that he had prepared the list and provided to Ricci "to provide to Fundkite." (Id. at 43-44.) The subject line of Capozzolo's email to Ricci containing the list was "EXACT ADVANCE BALANCES," which indicates that it was a complete list. (See Docket No. 5-1 at p. 38.) In his testimony, he did not specify that he intended this to be only a partial list. Later, Capozzolo testified that Fundkite had also asked him to provide "all cash advance contracts." (Docket No. 5-3 at p. 45.)

Although the list is not titled "all obligations," both parties operated under the belief and impression that Capozzolo was consolidating all previous merchant cash advances. (Docket No. 5-3 at p. 39.) It was therefore reasonable for Fundkite to believe that the list Capozzolo submitted was a complete list of his outstanding obligations.  Within this context, Capozzolo's failure to include all his obligations, or to clarify that the list only included some obligations, suffices to establish a "reckless disregard of the truth." In re Boice, 149 B.R. 40, 47

For all these reasons, the evidence is sufficient to establish to find that Capozzolo intended to deceive Fundkite when he omitted the Mr. Advance obligation from the list he provided.  Summary judgment was therefore proper as to the element of intent.

### c.  Reasonable Reliance

Capozzolo finally argues that Fundkite did not reasonably rely on the list he provided and should have discovered the Mr. Advance obligation through its own research.

The test for reasonable reliance focuses on whether the statement is of such a nature that a reasonably prudent person would rely on it. In re Boice, 149 B.R. at 46. "Examples of unreasonable reliance on a materially false financial statement include situations where the creditor knows or has reason to know that the financial statement is false; where the financial statement is so deficient that it fails to portray a realistic picture of the debtor's financial status; where the creditor's own investigation indicates that the financial statement may be false; or where the creditor, under certain circumstances, failed to verify the information contained in the statement." Id. at p. 47 (internal citations omitted).

Capozzolo suggests that FundKite should have discovered the Mr. Advance contract by some other means. But he does not offer any evidence that the contract was discoverable by any other means a mere 14 days after it was entered. For its part, Fundkite provided an affidavit from its CEO detailing the research Fundkite conducted into Capozzolo's and Buffalo Forklift's obligations and financial position. Nothing in FundKite's diligence, as described by Shvartz, indicates that its research was incomplete or that it disregarded red flags. In re Lavender, 399 F. App'x at 653–54 ("Lavender's primary argument is that the finding of reasonableness here was improper given the allegedly insufficient investigation by Creditors in light of certain "red flags" in the 1998 financial statement submitted by Debtor. However, no significant red flags were present.") On the contrary, the due diligence and Shvartz's explanation of his reliance on the list as

10

containing all of Buffalo Forklift's outstanding merchant cash advances easily suffice to establish reasonable reliance. Capozzolo's argument is simply unconvincing. Accordingly, this Court finds no error in the Bankruptcy Court's determination that Fundkite reasonably relied on the list Capozzolo provided. Id.

## IV.  CONCLUSION

The Bankruptcy Court correctly found that Fundkite established the absence of a genuine issue of material fact as to the elements of material misrepresentation, intent, and reasonable reliance. For this reason, this Court affirms the Order of the Bankruptcy Court finding Capozzolo's debt to Fundkite nondischargeable pursuant to 11 U.S.C. § 523 (a)(2)(B).

## V.  ORDERS

IT HEREBY IS ORDERED, that the Order of the Bankruptcy Court, Western District of New York (1:20-bk-1011-CLB, Docket No. 49), is AFFIRMED.

FURTHER, that the Appeal (Docket No. 1) is DENIED and DISMISSED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:        September 8, 2022
              Buffalo, New York

                              s/William M. Skretny
                           WILLIAM M. SKRETNY
                         United States District Judge